# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1917 | **DATE** | 2/22/2001 |
| **CASE TITLE** | Salmanis vs. American Postal Workers Union, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants' motions for summary judgment [14] and [17] are denied. Motion to strike attorneys' fees is denied. Motion to strike plaintiff's prayer for punitive damages is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | FEB 26 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 38 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 2/22/2001 date mailed notice | |
| MD | courtroom deputy's initials | FEB 23 PM 4:35 | MD7 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LYDIA V. SALMANIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 00 C 1917 |
| | ) |
| AMERICAN POSTAL WORKERS UNION, | ) |
| AFL-CIO, a national labor organization, | ) |
| AMERICAN POSTAL WORKERS UNION, | ) |
| AFL-CIO NORTHWEST ILLINOIS AREA | ) |
| LOCAL NO. 7140, a local labor organization, | ) |
| and UNITED STATES POSTAL SERVICE, | ) |
| a federal agency, | ) |
| | ) |
| Defendants. | ) |

DOCKETED
FEB 26 2001

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Lydia Salmanis ("plaintiff") in Count I of her complaint has alleged a hybrid action against her employer, the United States Postal Service ("USPS") and her "union" (American Postal Workers Union, AFL-CIO ["National APWU"], and the American Postal Workers Union, AFL-CIO Northwest Illinois Area Local No. 7140 ["Local APWU"]) for breach

---

[1]The court is not unaware that plaintiff's counsel has within the past few days made numerous telephone calls to the court's administrative assistant and courtroom deputy clerk inquiring as to when this opinion will be issued. The court's staff reports that even after advising plaintiff's counsel repeatedly that she would be promptly notified of the ruling, counsel made further calls and in one conversation expressed her dismay that the court had not met its ruling date of February 21 even though it expected plaintiff's counsel to meet the dates given for preparation of pretrial materials. Counsel is reminded that the court on February 20 indicated in open court its intention to deny summary judgment and extended the dates for plaintiff to file pretrial materials because plaintiff had yet to provide defendant with a draft. Counsel is further reminded that the court's opinion on summary judgment, while admittedly helpful in the preparation of the pretrial materials, is not necessary thereto. The court hopes that counsel will draw from this marginal admonition a lesson for her future conduct.

1

of a collective bargaining agreement/breach of duty of fair representation under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. In Count II, she asserts a claim against the union for violation of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411, based on allegations that the union violated her freedom of speech. Both the USPS and the union have moved for summary judgment. The union has also moved to strike plaintiff's request for attorneys' fees and punitive damages. For the reasons set forth below, the court denies the motions for summary judgment, denies the motion to strike plaintiff's request for attorneys' fees and grants the motion to strike plaintiff's request for punitive damages.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.*, 477 U.S. at 324, 106 S. Ct. at 2553; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-599. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court

2

must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986).

## UNDISPUTED FACTS[2]

Plaintiff has been employed by the USPS since 1971. On June 4, 1993, job 7583576, a flat sorting machine operator position at pay level 5 was posted for bid. It was awarded to George Negron ("Negron") as "qualification pending.[3]" Before Negron's "qualification pending" status was removed, however, he was awarded another job. Notices of Negron's job awards were automatically sent to the union, but unbeknownst to USPS, the computer system used to track job positions contained a programming error whereby, once an employee was entered "qualification pending" but then awarded another position before obtaining qualification, the computer would not provide a notice that the former position was again available for bid. Thus, when Negron

---

[2]The following facts are derived substantially from the defendants' statements of uncontested facts. The court relies on facts from the union defendant's Local Rule 56.1(a)(3) statement that were not disputed by plaintiff's 56.1(b)(3) response. The court deems as admitted the facts in the USPS's 56.1(a)(3) statement since plaintiff's 56.1(b)(3) response contained only flat denials without reference to supporting materials supporting her disagreement. *See Valenti* v. *Qualex, Inc.*, 970 F.2d 363, 369 (7th Cir. 1992). In addition, plaintiff simply set forth her additional facts that she asserts require denial of summary judgment in her response briefs. Thus, she failed to comply with 56.1(b)(3)(B), which requires that plaintiff submit a "statement consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." The court, therefore, has not considered these facts in its ruling because these facts are not properly before the court. *See Midwest Imports, Ltd.* v. *Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995). The Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment." *Bordelon* v. *Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000); *Valenti*, 970 F.2d at 369 ("Any facts asserted by the movant and not contradicted in the manner specified by the rule are deemed admitted.").

[3]"Qualification pending" is explained at footnote 5 below.

3

took a different job, the USPS computer system failed to recognize that job as vacant and did not promptly develop a vacancy notice. The USPS did not identify job 7583576 as vacant until March 16, 1995. On April 11, 1995, the USPS posted a bid posting for job 7583576.

When Arthur Rivers ("Rivers"), the Clerk Craft Director for Local APWU saw that job 7583576 was posted in April 1995 but had become vacant on May 14, 1993 he told Local APWU steward Shirlean Baker ("Baker") to file a grievance against the USPS asserting that failure to timely post a vacant bid violated the collective bargaining agreement ("CBA") between the USPS and the union.[4] On April 14, 1995, Baker filed a grievance requesting that the successful bidder for job 7583576 be paid out of schedule from May 14, 1993 until the time he or she was placed into the bid job. As a result of the perceived violation, Local APWU advised the members of the bargaining unit that the eventual successful bidder might be entitled to a substantial amount of money.

Although plaintiff held a day shift job at pay level 6,[5] she bid on this position, a mid-night shift job at pay level 5, solely because it was a "money bid" which she believed would amount to about $25,000 to her for time she did not occupy that position. The senior bidder[6] for job

---

[4]In 1993, the Collective Bargaining Agreement ("CBA") required that vacant positions be posted for bid or abolished (known as "reverted") within 21 days of the vacancy occurring.

[5]Although plaintiff had been working a flat sorting machine operator job, she was awarded a position as a review clerk at pay level 6 on June 25, 1993.

[6]After the close of the bidding, the bidder with the most seniority was to be awarded the position. Some positions required the senior bidder to possess certain skills to qualify for the position. If the senior bidder was unable to qualify for the position awarded before the end of the deferment period, the position was then awarded to the next senior bidder. Possessing the necessary skills is referred to as a "live record," that is, "[a] record of qualification which makes an employee qualified, for bidding purposes, on a particular scheme, skill, or other qualification requirement." In 1995, an employee's live record obtained for a certain skill expired "two years

4

7583576 turned out to be Gladys Edwards ("Edwards"), and she was assigned this position "qualification pending." Edwards was unable to qualify for the position, however, and on June 30, 1995, plaintiff was sent a notice indicating that she was the successful bidder and was entitled to begin the job effective July 8, 1995. Plaintiff occupied job 7583576 from July 8, 1995 to August 4, 1995. Thereafter, she bid on a review clerk position, the duty she performed prior to the FSM position, and was awarded that position effective August 5, 1995.

The Grievance Process

The grievance filed on April 14, 1995 was designated Grievance No. P3-95-136 (herein "the grievance") and was filed as a union grievance because, when it was filed, Local APWU did not know the identity of the eventual successful bidder. As a union grievance, the individual who will receive the benefits derived from the grievance can be determined by the parties at any time during the grievance-arbitration procedure, including after the arbitration award has been issued by an arbitrator. In fact, if the union identifies a specific individual as the grievant and the union later turns out to be wrong, the union may be unable to prevail on the grievance. Thus, when the union pursues a union grievance, it does not usually identify a grievant until the parties are ready to resolve the grievance.

The USPS denied the grievance at Step 1 of the grievance-arbitration procedure and Local APWU appealed to Step 2 on April 25, 1995. Three Step 2 meetings were held between Rivers and USPS Senior Personnel Services Specialist, Catherine Kulig ("Kulig"). On or about

---

after the employee ceases to perform the duties which require the skill." If the senior bidder does not possess a live record, then the computer will record the senior bidder in the position, "pending qualification," and the senior bidder is granted a deferment period in which to demonstrate the required skills.

July 21, 1995, Kulig issued a letter to Rivers denying the grievance. In the letter, Kulig identified Edwards as the successful bidder for job 7583576 and estimated the amount of out of schedule pay potentially owed to her as approximately $22,289.00. She offered to settle for $5,000 but Local APWU rejected the offer. Rivers issued a rebuttal letter on or about July 28, 1995, stating that "management . . . owes the eventual successful bidder at least $22, 289.00 for violation of Art. 37" of the CBA. On or around August 9, 1995, Local APWU appealed to Step 3 to benefit the "eventual successful bidder" for job 758576.[7] The union did not designate a successful bidder in the Step 3 appeal form. The USPS denied the grievance at Step 3 in September of 1995 by letter which did not identify a successful bidder. On or about September 14, 1995, National APWU appealed for arbitration.

In the Fall of 1998, APWU National Business Agent John Clark ("Clark") met with USPS representative John Behnke in an effort to settle the grievance and they did, in fact, settle on or about December 23, 1998 for half of the out of schedule pay sought by National APWU. Once National APWU had decided to settle, Clark reviewed the grievance file to determine who was the successful bidder for job 7583576 and thus entitled to the money. Relying solely on the the Kulig letter and the absence of anything in the file to the contrary, Clark designated Edwards as the individual entitled to the settlement money, and USPS paid Edwards $11,114.50.

## Plaintiff's Conduct

Prior to July 1995, plaintiff spoke with Rivers about the grievance. Plaintiff told Rivers that she felt that because she was awarded job 7583576, she should be listed as the person who should be getting the money. After speaking with Rivers, plaintiff made an inquiry of another

---

[7]Plaintiff did not occupy job 7583576 on the day the union appealed to Step 3.

union steward, Jackie Englehardt, regarding the grievance. In early July 1995, plaintiff also inquired of Clark regarding the grievance and who would receive any money awarded. Between July 1995 and October 1999, however, plaintiff made no further inquiries about the grievance. In plaintiff's experience, finalized dispositions of grievances involving her were usually issued in "one or two months." Although plaintiff believed that she was going to receive a significant amount of money from the grievance, she did nothing in 1996, 1997 or 1998 to ascertain the status of the grievance because she "didn't see any reason to." On October 6, 1999, plaintiff learned that Edwards was awarded the settlement. She filed her district court complaint on March 30, 2000.

## DISCUSSION

A.     Statute of Limitations

As a threshold matter, the USPS argues that plaintiff's section 301 claim[8] (Count I) is barred by the applicable statute of limitations, which requires filing a suit within six months of the date the claim arose. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983). A section 301 claim "accrues from the time a final decision on a plaintiff's grievance has been made or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance." *Chapple v. National Starch & Chem. Co.*, 178 F.3d 501, 505 (7th Cir. 1999); *see also Barlow v. American Nat'l Can Co.*, 173 F.3d 640, 644 (8th Cir. 1999) ("[A]n employee's cause of action accrues when the

---

[8]The appropriate statutory basis for plaintiff's lawsuit is the Postal Reorganization Act, 39 U.S.C. § 1208(b), the analogue to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). However, courts hold that case law developed under § 301 is equally applicable to actions brought by USPS employees under § 1208(b). *See Melendy v. United States Postal Service*, 589 F.2d 256, 260 (7th Cir. 1978); *Thoele v. United States Postal Service*, 996 F. Supp. 818, 820 (N.D. Ill. 1998).

7

grievance procedure is exhausted or otherwise breaks down to the employee's disadvantage.");
*Hood v. Sweetheart Cup Co.*, 816 F. Supp. 720, 725 (S.D. Ga. 1993) ("In hybrid suits, cause of action accrues on the date that the plaintiff knew or should have known of the union's or the employer's final action, whichever occurs later."). If a plaintiff files beyond the six month statute of limitations, the doctrine of equitable tolling permits her to avoid the bar "if despite all due diligence [she] is unable to obtain vital information bearing on the existence of [her] claim." *Chapple*, 178 F.3d at 505-06. The question for tolling is "whether a reasonable person in the plaintiff's position would have been aware within the limitations period of the possibility that [her] rights have been violated." *Id.* at 506. If so, "equity does not toll the limitations period." *Id. See also Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Medical Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999) ("Equitable tolling 'often focuses on the plaintiff's excusable ignorance of the limitations period and on the lack of prejudice to the defendant.'") (internal quotations omitted). Plaintiff has the burden of showing she falls within the exception. *Zapp v. United Transp. Union*, 879 F.2d 1439, 1441 (7th Cir. 1989).

The undisputed evidence is that plaintiff learned on October 6, 1999 of the union's and USPS's action awarding the proceeds to Edwards, and her complaint was brought within six months of learning this on March 30, 2000. The USPS nevertheless argues that the suit was untimely because plaintiff, had she exercised due diligence, should have known of her claim on December 23, 1998, when the settlement agreement was executed. Dispelling any tolling argument, the USPS further argues that plaintiff should have been aware of her claim long before October 1999.

In the first instance, the USPS has not persuasively argued that plaintiff's claim even

8

began to accrue with the execution of the settlement agreement in December. Here, in a case involving a union grievance where plaintiff's claim is based on the distribution of proceeds to the wrong person after a settlement to which she was not a party, plaintiff's claim did not arise until the money was actually given to the wrong person because until that time the union could have corrected the mistake. Assuming that plaintiff's filing in March, 2000 is beyond six months from when USPS paid Edwards, however, the court concludes there is a genuine issue of material fact as to whether a reasonable person in the plaintiff's position should have been aware within the limitations period of the possibility that her rights had been violated. Reasonableness is a question for the jury. *See generally Cathedral of Joy Baptist Church v. Village of Hazel Crest*, 22 F.3d 713, 719 (7th Cir. 1994) (noting that reasonable diligence only becomes an issue for the court if the relevant facts are undisputed and only one conclusion can be drawn from them); *Mushroom Transp. Co. v. Security Pacific Bank Oregon*, 247 B.R. 395, 400 (E.D. Pa. 2000) ("question whether a plaintiff has exercised reasonable diligence is usually a jury question"). And the court believes a reasonable jury could conclude that she acted reasonably under the circumstances.[9] For these reasons, the USPS is not entitled to summary judgment on the statute

---

[9]The USPS does not dispute that plaintiff did inquire of both the Local APWU (Rivers) and National APWU (Clark) about the grievance shortly after she had been awarded the position in June of 1995. Plaintiff testified in her deposition that in those conversations she informed them that because she had been placed in the job she believed she should be identified in the grievance documents, that she was told by the union representative that this was a "class action grievance and it was supposed to go to the person who was the successful bidder," and that it would be reviewed before they paid anyone. *See* Pl. Depo. at 56. Having received these assurances, a fact finder could infer that plaintiff reasonably abstained from further inquiry. Also, there is no evidence that union made any attempt to notify any of the potentially interested union members of the outcome of this union grievance. *Compare Barlow*, 173 F.3d at 644 (where grievance was not filed on plaintiffs' behalf but it was undisputed that unions made effort to explain settlement to their members it was incumbent upon plaintiffs to file within 6 months of the settlement agreement).

9

of limitations issue.

B.      Section 301 Claim

A claim against an employer for breach of a collective bargaining agreement under section 301 and a claim against a union for breach of the duty of fair representation (a duty that is implied under the scheme of the National Labor Relations Act) "are inextricably interdependent." *DelCostello*, 462 U.S. at 164. To prevail against either the employer or the union, plaintiff must not only show that the employer breached the contract but also that the union breached its duty of fair representation. *Id.* On summary judgment, the failure to produce sufficient evidence from which a reasonable jury could conclude that the union breached its duty of fair representation bars the claim in its entirety. *See Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997) ("neither claim is viable if the other fails").

1.      Duty of Fair Representation

Because of a "union's statutory role as exclusive bargaining agent" there is a duty to exercise the power on behalf of and in interest of its constituency – the union members. *See Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 74 (1991). This duty of fair representation is "akin to the duty owed by other fiduciaries to their beneficiaries" and just as "fiduciaries owe their beneficiaries a duty of care as well as a duty of loyalty, a union owes employees a duty to represent them adequately as well as honestly and in good faith." *Id.* at 75. At the same time, "[l]ike other representative entities, unions must balance the competing claims of its constituents . . . [and] [t]he Court has recognized that '[t]he complete satisfaction of all who are represented is hardly to be expected.'" *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 688-89 (1987) (Powell, J., concurring) (quoting, in part, *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)). For this

reason, an employee may not recover for breach of the duty of fair representation for a union's decision to pursue or settle a grievance, or any other discretionary decision, absent proof of bad faith, arbitrariness or discrimination. *O'Neill*, 499 U.S. at 67; *Vaca v. Sipes*, 386 U.S. 171, 190 (1967); *Humphrey v. Moore*, 375 U.S. 335, 349 (1964); *see also Fillipo v. Northern Indiana Public Serv. Corp.*, 141 F.3d 744, 748-49 (7th Cir. 1998) (noting that this "is a tripartite standard" and in order for plaintiff "to defeat a motion for summary judgment, plaintiff must proffer evidence supporting at least one of these elements").

Whether a union's representation is arbitrary entails a consideration of the objective adequacy of the union's conduct. *Crider*, 130 F.3d at 1243. *Vaca* placed some flesh on the bones of "arbitrariness" when the Court said, "Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." 386 U.S. at 191. Perfunctory, according to Webster, means "characterized by routine or superficiality: done merely as a duty." WEBSTER'S THIRD NEW INT'L DICTIONARY (unabridged) at 1678 (1981); *see also Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1240 (10th Cir. 1998) (quoting same). Courts have construed the "Supreme Court's reference in *Vaca* to the 'perfunctory' processing of a grievance to mean that 'the union acted without concern or solicitude, or gave a claim only cursory attention.'" *Id.* (quoting *Beavers v. United Paperworkers Int'l Union, Local 1741*, 72 F.3d 97, 100 (8th Cir. 1995)). And unintentional conduct may be arbitrary if "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *O'Neill*, 499 U.S. at 67; *Fillipo*,

11

141 F.3d at 749. However, "the test for determining whether particular conduct is arbitrary can be quite forgiving" and courts "should not substitute their judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call." *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995). "Only an egregious disregard for union members' rights" will constitute a breach of the duty of fair representation. *Id.* Although this is a high standard to meet, the court concludes that there is sufficient evidence in the record to give rise to an issue of fact as to whether the union processed the grievance in a perfunctory manner in improperly processing the grievance to Edwards' benefit and as such was an egregious disregard of plaintiff's rights.

The parties agree that the decision to award Edwards the settlement money was made by Clark in reliance upon the designation made by the USPS (Kulig) in the Step 2 denial letter. Further, the parties also apparently agree that an error had been made by the USPS in identifying Edwards as the successful bidder. *See* Union's Reply Br. at 10; USPS Reply Br. at 9; Pl. Response Br. to Union Br. at 12-13. Plaintiff argues that the union's action in processing the grievance was arbitrary because, *inter alia*, it failed entirely to investigate who should be the proper recipient of the proceeds either at the local level by Rivers or at the national level by Clark before awarding the proceeds to Edwards. The union argues that the decisions made by Rivers and Clark not to do their own investigations into the eventual successful bidder were rational.

As to Rivers' action, the court finds no evidence of arbitrariness in not naming plaintiff as the successful bidder as he pursued the grievance. Rather, the evidence is uncontroverted that Rivers relied on the union's prevailing practice in moving the grievance through the process on behalf of the "eventual successful bidder" until it was resolved. *See* Union Br. at 14; Pl.

Response Br. to Union Br. at 14. A union's reliance on practice is a wholly relevant consideration and a sound reason for an omission to do something, and will not give rise to liability. *See Ruzicka v. General Motors Corp.*, 649 F.2d 1207, 1211-12 (6th Cir. 1981) (Ruzicka II). No reasonable jury could conclude that this discretionary decision was irrational, perfunctory or otherwise arbitrary.

As to Clark's conduct, however, the court concludes otherwise. The union states that although "[t]ypically, Mr. Clark would investigate who was the actual successful bidder, . . . he believed that this investigation had already been completed, [and a]lthough the APWU did not do its own investigation to determine who had been the successful bidder, relying the [USPS's] determination of the successful bidder was not so far outside the wide range of reasonableness as to be irrational." Union Br. at 15. The union does not cite any testimony of Clark, however, as to his rationale. Indeed, a review of Clark's declaration is more a chronology of what he did than an explanation of why, other than to say he relied on the file.

> Once I had decided to settle the grievance, I reviewed the file to determine who
> was the successful bidder for the duty assignment in question, and therefore,
> entitled to the money that resulted due to the settlement.

*See* Clark Decl. at ¶ 21. Significantly, Clark's statement fails to explain why a three-year-old letter in a "union grievance" file should justify dispensing with his usual practice to investigate. *See Peters v. Burlington Northern R.R.*, 931 F.2d 534, 541 (9th Cir. 1990) (finding significant that union failed to explain its action as product of judgment, whether sound or flawed, and thus there was a triable question as to whether union acted in completely arbitrary manner by failing to research agreement).

Conceding that it may have been a mistake to rely on the USPS determination and that

13

the union could have verified the USPS's information, the union contends that its failure to do so was negligence at most. If perfunctoriness is actionable, as indicated above, then the court must draw a line between negligence and something worse, perfunctoriness.[10] The factual and legal context of this grievance suggests an issue of fact as to whether the union was perfunctory in processing the grievance. In short, it is undisputed that Clark departed from the union's and his normal practice. *Compare Armstrong v. Chrysler Corp.*, 972 F. Supp. 1085, 1090 (E.D. Mich. 1997) (granting summary judgment on breach of duty of fair representation claim where, inter alia, "[p]laintiff has come forward with no proof that the Union departed from its established policies and procedures regarding the investigation of grievances."). Although a plaintiff must show more than a union's failure to act in accordance with its standard procedure to establish that the union's activities were arbitrary, *Garcia*, 58 F.2d at 1179, if a union decides to make a rational decision to protect the interests of the union as well as its employees which it is entitled to do, it must also pursue this "rational strategy with sufficient competence and vigor." *Id.* at 1179-80. Here the union rationally chose to leave the process open and not identify the

---

[10]The cases that discuss perfunctoriness suggest that there is a type of balancing that is involved. *See Hill v. Sanford Corp.*, 1997 WL 164002, *6 (N.D. Ill. Mar. 27, 1997) (reasoning that an employee's interest in not being deprived of his right to proceed is balanced against need to afford deference to union's decision making and employer's interest in being able to rely on finality in the grievance process) (relying on Judge Cudahy's concurrence in *Hoffman v. Lonza*, 658 F.2d 519 (7th Cir. 1981)). Deference to union decision making is essential to the purposes of *Vaca* standard but deference to a union's failure to make a decision serves no valid union interest. *Hoffman v. Lonza*, 658 F.2d 519, 525 (7th Cir. 1981) (Cudahy, J., concurring). *See also Dutrisac v. Caterpillar Tractor Co.*, 749 F.2d 1270, 1274 (9th Cir. 1983) ("When the challenged conduct, however, is based not on any decision about how to handle the grievance, but on the failure to perform ministerial acts, judicial deference to the union serves no purpose and "union negligence may breach the duty of fair representation to cases in which individual interest at stake is so strong and the union's failure to perform a ministerial act completely extinguishes the employee's right to pursue his claim.").

14

successful bidder earlier in the process but is not persuasive that it fulfilled its responsibility to pursue the strategy with competence or vigor. Based on this evidence, the court cannot conclude that there is sufficient evidence to grant summary judgment to defendants.[11] Moreover, this is a case where the error entirely foreclosed plaintiff's rights. *Compare Treuer* v. *Shop-Rite, Inc.*, 35 F. Supp. 2d 678, 686 (E.D. Wisc. 1999) (noting that additional benefit to plaintiff of additional bit of information "was minimal at best"). The court, thus, turns to the question of whether there is sufficient evidence of a breach of the CBA, which plaintiff must also show to prove her case against both the union and the USPS.

2. Breach of CBA

The USPS argues that even if this court finds that there is a material issue of fact as to a breach of the union's duty of fair representation, plaintiff's claim must nevertheless fail because she cannot establish an actionable breach of the CBA by which she can prevail against the USPS. Plaintiff alleged several violations of the CBA in her complaint (Articles 5, 8, 15, 19 and 37). The USPS and plaintiff focus primarily on the requirements necessary to prevail on the breach of the provision requiring the USPS to post job vacancies within 21 days. CBA, Art. 37, Sec.A.1. This alleged breach, however, was the subject of the grievance that was settled and, therefore, cannot be revisited by this court.[12] Instead, the pertinent inquiry to be whether the USPS breached its obligation under the CBA Article 37 that

---

[11]Because the court finds that there is an issue as to whether the union's processing of the grievance was perfunctory and arbitrary, it does not discuss whether there is evidence of bad faith or discriminatory conduct as alleged by plaintiff.

[12]The union and the USPS entered into a settlement stating that the settlement was "a final and complete settlement of the subject grievances [P3-95-136]." Complaint, Ex. A.

15

> Within 10 days after the closing date for the posting . . . the installation head shall post a notice listing the senior or successful bidder(s) and their seniority dates. The senior qualified bidder meeting the qualification standards for the position shall be designated the 'successful bidder.'

CBA, Art. 37 Sec.3.F.1.a. The USPS does not appear to dispute that plaintiff was the senior qualified bidder meeting the qualification standards for job 7583576 and therefore the successful bidder. *See* USPS 56.1(a)(3) Statement, ¶ 36 (plaintiff was sent a notice indicating that she was the *successful bidder* and held the job effective July 8). Moreover, the USPS does not dispute that the denial letter of its employee, Kulig, designated Edwards as the successful bidder and calculated her out of schedule pay, and that on December 23, 1998, the USPS and union reached a pre-arbitration settlement in the grievance regarding job 7583576, in which Edwards was awarded one-half the amount of the out of schedule pay calculated by Kulig. *Id.* at ¶¶ 49, 55. As such, this is a breach of the CBA. Therefore, the court concludes that there is sufficient evidence to meet the second element of a 301 claim and the defendants' motions for summary judgment on that claim are denied.

C.  LMRDA Claim

Because the court denies the union's and the USPS's motions for summary judgment on the hybrid 301 breach of collective bargaining agreement/breach of duty of fair representation claims, it reserves for trial a decision on the LMRDA claim against the union (Count II).

D.  Motion to Strike Attorneys' Fees and Punitive Damages

The union has also moved to strike plaintiff's request for attorneys' fees and punitive damages. As to attorneys' fees, the union requested that this court strike the plaintiff's request for attorneys' fees in attempting to prove that the union breached its duty of fair representation.

16

The court denies the request. *Vaca* set forth the governing principle on damages, which is to "apportion liability between the employer and the union according to the damage caused by the fault of each." 386 U.S. at 197. Although section 301 contains no express remedial provision, upon a finding of unfair representation, courts have recognized that the damage caused by the union includes the attorneys' fees incurred as a result of the union's breach. *See, e.g., Bennett v. Local Union No. 66, Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union, AFL-CIO, CLC*, 958 F.2d 1429, 1440 (7th Cir. 1992) ("fees are not awarded as a penalty, but rather as proximate consequential damages for the union's failure to provide representation: the expense [plaintiff] has incurred in pursuing her contractual grievance against the [employer] 'is not merely a result of the harm that [the Union] did [her]; it is the harm itself'"); *Del Casal v. Eastern Airlines, Inc.*, 634 F.2d 295, 301 (5th Cir. 1981); *Scott v. Local Union 377, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 548 F.2d 1244, 1246 (6th Cir. 1977) (claim against company would not have occurred but for union's breach of duty). Therefore, the court denies the union's request to strike plaintiff's request for attorneys' fees against the union.

Plaintiff has also requested punitive damages, but only against the union on her LMRDA claim. Although the union has requested the court to strike the request for punitive damages, it cites only *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 42 (1979) in support. Although *Foust* held that punitive damages may not be assessed against a union for breaches of duty of fair representation, it reserved the question as to whether punitive damages were available under the LMRDA. *Foust*, 442 U.S. at 47 n.9. *See also Burkauskus v. Hall's Motor Transit Co.*, 1985 WL 1266, *7 (N.D. Ill. 1985). Indeed, the Seventh Circuit recently recognized that "[t]he LMRDA

17

does not specifically permit or preclude punitive damages," *Kinslow v. American Postal Workers Union, Chicago Local*, 222 F.3d 269, 278-79 (7th Cir. 2000), adding, however, that "[p]unitive damages are awarded in LMRDA cases only where the union acted with ill will or reckless disregard for the plaintiff's interests." *Id.* "Thus, to merit such an award, plaintiff must show that: (1) in retaliating against the plaintiff, the union acted willfully or with reckless disregard for the plaintiff's interests; and (2) the union conduct was egregious or the harm it inflicted was severe." *Id.* Plaintiff has not alleged that the union acted maliciously or recklessly in preventing her from expressing her views as a union member, nor do the allegations suggest it. Thus, the court grants the union's request to strike plaintiff's request for punitive damages as to the LMRDA claim. *See Burkauskus*, 1985 WL 1266 at *7 (granting motion to strike request for punitive damages as to LMRDA claim).

## CONCLUSION

For the reasons explained above, the court denies the motions for summary judgment, denies the motion to strike attorneys' fees and grants the motion to strike plaintiff's prayer for punitive damages. In summary, two issues remain for trial on Count I: (1) whether the plaintiff exercised due diligence in discovering her claim and (2) whether the union was arbitrary in its processing of the grievance after the settlement. If plaintiff should prevail on both counts of her complaint, her damages will not exceed the amount of the settled grievance, plus interest and a reasonable attorney's fee. The court suggests that the cost entailed in taking this case to trial is disproportionate to the possible benefit that will accrue to the plaintiff and, therefore, strongly urges the parties to fashion a reasonable settlement. The matter of settlement will be discussed at

18

the final pretrial conference.

ENTER: /s/ Joan H. Lefkow
United States District Judge

Date: February 22, 2001