# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1917 | **DATE** | 3/2/2001 |
| **CASE TITLE** | Salmanis vs. American Postal Workers Union, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Motion of United States Postal Service for summary judgment [17] and motion of American Postal Workers Union for summary judgment [14] are denied. The Union's motion to strike attorneys' fees [14] is denied and the Union's motion to strike punitive damages [14] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | 3 | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | MAR 06 2001 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | docketing deputy initials | | |
| | Mail AO 450 form. | | | 3/2/2001 | | |
| | Copy to judge/magistrate judge. | | | date mailed notice | | |
| MD | courtroom deputy's initials | | FILED FOR DOCKETING 01 MAR -5 AM 9: 12 | MD7 mailing deputy initials | | |
| | | | Date/time received in central Clerk's Office | | | |

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| LYDIA V. SALMANIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AMERICAN POSTAL WORKERS UNION, )<br>AFL-CIO, a national labor organization, )<br>AMERICAN POSTAL WORKERS UNION, )<br>AFL-CIO NORTHWEST ILLINOIS AREA )<br>LOCAL NO. 7140, a local labor organization, )<br>and UNITED STATES POSTAL SERVICE, )<br>a federal agency, )<br>)<br>Defendants. ) | Case No. 00 C 1917 |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Lydia Salmanis ("plaintiff") in Count I of her complaint has alleged a hybrid

action against her employer, the United States Postal Service ("USPS") and her "union"

(American Postal Workers Union, AFL-CIO ["National APWU"], and the American Postal

Workers Union, AFL-CIO Northwest Illinois Area Local No. 7140 ["Local APWU"]) for breach

of a collective bargaining agreement/breach of duty of fair representation under Section 301 of

the Labor Management Relations Act, 29 U.S.C. § 185. In Count II, she asserts a claim against

the union for violation of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411,

based on allegations that the union violated her freedom of speech. Both the USPS and the union

have moved for summary judgment. The union has also moved to strike plaintiff's request for

---

[1]This opinion supersedes the court's February 22, 2001, memorandum opinion and order,
which was vacated by order of court on March 1, 2001.

attorneys' fees and punitive damages. For the reasons set forth below, the court denies the

motions for summary judgment, denies the motion to strike plaintiff's request for attorneys' fees

and grants the motion to strike plaintiff's request for punitive damages.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and

assess the proof as presented in depositions, answers to interrogatories, admissions, and

affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The

party seeking summary judgment bears the initial burden of proving there is no genuine issue of

material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). In

response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary

tools listed above to designate specific material facts showing that there is a genuine issue for

trial. *Id.*, 477 U.S. at 324, 106 S. Ct. at 2553; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598

(7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*,

216 F.3d at 598-599. Although a bare contention that an issue of fact exists is insufficient to

create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court

must construe all facts in a light most favorable to the non-moving party as well as view all

reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255,

106 S. Ct. 2505, 2513 (1986).

UNDISPUTED FACTS[2]

Plaintiff has been employed by the USPS since 1971. On June 4, 1993, job 7583576, a

flat sorting machine operator position at pay level 5 was posted for bid. It was awarded to

George Negron ("Negron") as "qualification pending.[3]" Before Negron's "qualification pending"

status was removed, however, he was awarded another job. Notices of Negron's job awards were

automatically sent to the union, but unbeknownst to USPS, the computer system used to track job

positions contained a programming error whereby, once an employee was entered "qualification

pending" but then awarded another position before obtaining qualification, the computer would

not provide a notice that the former position was again available for bid. Thus, when Negron

took a different job, the USPS computer system failed to recognize that job as vacant and did not

promptly develop a vacancy notice. The USPS did not identify job 7583576 as vacant until

March 16, 1995. On April 11, 1995, the USPS posted a bid posting for job 7583576.

---

[2]The following facts are derived substantially from the defendants' statements of uncontested facts. The court relies on facts from the union defendant's Local Rule 56.1(a)(3) statement that were not disputed by plaintiff's 56.1(b)(3) response. The court deems as admitted the facts in the USPS's 56.1(a)(3) statement since plaintiff's 56.1(b)(3) response contained only flat denials without reference to supporting materials supporting her disagreement. *See Valenti* v. *Qualex, Inc.*, 970 F.2d 363, 369 (7th Cir. 1992). In addition, plaintiff simply set forth her additional facts that she asserts require denial of summary judgment in her response briefs. Thus, she failed to comply with 56.1(b)(3)(B), which requires that plaintiff submit a "statement consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." The court, therefore, has not considered these facts in its ruling because these facts are not properly before the court. *See Midwest Imports, Ltd.* v. *Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995). The Seventh Circuit has "consistently and repeatedly upheld a district court's discretion to require strict compliance with its local rules governing summary judgment." *Bordelon* v. *Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000); *Valenti*, 970 F.2d at 369 ("Any facts asserted by the movant and not contradicted in the manner specified by the rule are deemed admitted.").

[3]"Qualification pending" is explained at footnote 5 below.

When Arthur Rivers ("Rivers"), the Clerk Craft Director for Local APWU saw that job 7583576 was posted in April 1995 but had become vacant on May 14, 1993 he told Local APWU steward Shirlean Baker ("Baker") to file a grievance against the USPS asserting that failure to timely post a vacant bid violated the collective bargaining agreement ("CBA") between the USPS and the union.[4] On April 14, 1995, Baker filed a grievance requesting that the successful bidder for job 7583576 be paid out of schedule from May 14, 1993 until the time he or she was placed into the bid job. As a result of the perceived violation, Local APWU advised the members of the bargaining unit that the eventual successful bidder might be entitled to a substantial amount of money.

Although plaintiff held a day shift job at pay level 6,[5] she bid on this position, a mid-night shift job at pay level 5, solely because it was a "money bid" which she believed would amount to about $25,000 to her for time she did not occupy that position. The senior bidder[6] for job 7583576 turned out to be Gladys Edwards ("Edwards"), and she was assigned this position

---

[4]In 1993, the Collective Bargaining Agreement ("CBA") required that vacant positions be posted for bid or abolished (known as "reverted") within 21 days of the vacancy occurring.

[5]Although plaintiff had been working a flat sorting machine operator job, she was awarded a position as a review clerk at pay level 6 on June 25, 1993.

[6]After the close of the bidding, the bidder with the most seniority was to be awarded the position. Some positions required the senior bidder to possess certain skills to qualify for the position. If the senior bidder was unable to qualify for the position awarded before the end of the deferment period, the position was then awarded to the next senior bidder. Possessing the necessary skills is referred to as a "live record," that is, "[a] record of qualification which makes an employee qualified, for bidding purposes, on a particular scheme, skill, or other qualification requirement." In 1995, an employee's live record obtained for a certain skill expired "two years after the employee ceases to perform the duties which require the skill." If the senior bidder does not possess a live record, then the computer will record the senior bidder in the position, "pending qualification," and the senior bidder is granted a deferment period in which to demonstrate the required skills.

"qualification pending." Edwards was unable to qualify for the position, however, and on June 30, 1995, plaintiff was sent a notice indicating that she was the successful bidder and was entitled to begin the job effective July 8, 1995. Plaintiff occupied job 7583576 from July 8, 1995 to August 4, 1995. Thereafter, she bid on a review clerk position, the duty she performed prior to the FSM position, and was awarded that position effective August 5, 1995.

## The Grievance Process

The grievance filed on April 14, 1995 was designated Grievance No. P3-95-136 (herein "the grievance") and was filed as a union grievance because, when it was filed, Local APWU did not know the identity of the eventual successful bidder. As a union grievance, the individual who will receive the benefits derived from the grievance can be determined by the parties at any time during the grievance-arbitration procedure, including after the arbitration award has been issued by an arbitrator. In fact, if the union identifies a specific individual as the grievant and the union later turns out to be wrong, the union may be unable to prevail on the grievance. Thus, when the union pursues a union grievance, it does not usually identify a grievant until the parties are ready to resolve the grievance.

The USPS denied the grievance at Step 1 of the grievance-arbitration procedure and Local APWU appealed to Step 2 on April 25, 1995. Three Step 2 meetings were held between Rivers and USPS Senior Personnel Services Specialist, Catherine Kulig ("Kulig"). On or about July 21, 1995, Kulig issued a letter to Rivers denying the grievance. In the letter, Kulig identified Edwards as the successful bidder for job 7583576 and estimated the amount of out of schedule pay potentially owed to her as approximately $22,289.00. She offered to settle for $5,000 but Local APWU rejected the offer. Rivers issued a rebuttal letter on or about July 28, 1995, stating

5

that "management . . . owes the eventual successful bidder at least $22, 289.00 for violation of Art. 37" of the CBA. On or around August 9, 1995, Local APWU appealed to Step 3 to benefit the "eventual successful bidder" for job 758576.[7] The union did not designate a successful bidder in the Step 3 appeal form. The USPS denied the grievance at Step 3 in September of 1995 by letter which did not identify a successful bidder. On or about September 14, 1995, National APWU appealed for arbitration.

In the Fall of 1998, APWU National Business Agent John Clark ("Clark") met with USPS representative John Behnke in an effort to settle the grievance and they did, in fact, settle on or about December 23, 1998 for half of the out of schedule pay sought by National APWU. Once National APWU had decided to settle, Clark reviewed the grievance file to determine who was the successful bidder for job 7583576 and thus entitled to the money. Relying solely on the the Kulig letter and the absence of anything in the file to the contrary, Clark designated Edwards as the individual entitled to the settlement money, and USPS paid Edwards $11,114.50.

Plaintiff's Conduct

Prior to July 1995, plaintiff spoke with Rivers about the grievance. Plaintiff told Rivers that she felt that because she was awarded job 7583576, she should be listed as the person who should be getting the money. After speaking with Rivers, plaintiff made an inquiry of another union steward, Jackie Englehardt, regarding the grievance. In early July 1995, plaintiff also inquired of Clark regarding the grievance and who would receive any money awarded. Between July 1995 and October 1999, however, plaintiff made no further inquiries about the grievance. In plaintiff's experience, final dispositions of grievances involving her were usually issued in "one

___

[7]Plaintiff did not occupy job 7583576 on the day the union appealed to Step 3.

or two months." Although plaintiff believed that she was going to receive a significant amount of money from the grievance, she did nothing in 1996, 1997 or 1998 to ascertain the status of the grievance because she "didn't see any reason to." On October 6, 1999, plaintiff learned that Edwards was awarded the settlement. She filed her district court complaint on March 30, 2000.

## DISCUSSION

A.     Statute of Limitations

As a threshold matter, the USPS argues that plaintiff's section 301 claim[8] (Count I) is barred by the applicable statute of limitations, which requires filing a suit within six months of the date the claim arose. *See DelCostello* v. *Int'l Bhd. of Teamsters*, 462 U.S. 151, 172 (1983). A section 301 claim "accrues from the time a final decision on a plaintiff's grievance has been made or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance." *Chapple* v. *National Starch & Chem. Co.*, 178 F.3d 501, 505 (7th Cir. 1999); *Hood* v. *Sweetheart Cup Co.*, 816 F. Supp. 720, 725 (S.D. Ga. 1993) ("In hybrid suits, cause of action accrues on the date that the plaintiff knew or should have known of the union's or the employer's final action, whichever occurs later."). The undisputed evidence is that plaintiff learned on October 6, 1999 of the defendants' actions resulting in the payment of the proceeds to Edwards, and her complaint was brought within six months of learning this on March 30, 2000. The USPS nevertheless argues

---

[8]The appropriate statutory basis for plaintiff's lawsuit is the Postal Reorganization Act, 39 U.S.C. § 1208(b), the analogue to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). However, courts hold that case law developed under § 301 is equally applicable to actions brought by USPS employees under § 1208(b). *See Melendy* v. *United States Postal Service*, 589 F.2d 256, 260 (7th Cir. 1978); *Thoele* v. *United States Postal Service*, 996 F. Supp. 818, 820 (N.D. Ill. 1998).

that the suit was untimely because plaintiff, had she exercised due diligence, should have known of her claim on December 23, 1998, when the settlement agreement was executed, and certainly long before October 1999. Plaintiff argues (a) that under *Chapple*, a section 301 claim accrues "not only when a decision has been rendered on a grievance, but also when a plaintiff discovers or in the exercise of reasonable diligence should have discovered the wrongful act," and (b), because she discovered the wrongful act in October, 1999, her claim accrued at that time. *See* Pl.'s Response to USPS's Mot. for Summary Judgment at 15.

The "discovery rule" on which the parties rely appears to be derived from *Richards* v. *Local 134, Int'l Bhd. of Elec. Workers*, 790 F.2d 633, 636 (7ᵗʰ Cir. 191986), which the Seventh Circuit in *Chapple* quoted. *Richards*, in turn, relied upon *DelCostello*, 462 U.S. at 155 and *Metz* v. *Tootsie Roll Indus., Inc.*, 715 F.2d 299, 304 (7ᵗʰ Cir. 1983). In *Metz*, the Seventh Circuit stated: "[T]he limitations period begins to run '. . . when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation].'"[9] *Metz*, 715 F.2d at 304. Because accrual includes not only injury but the discovery of it, the dispositive question here is whether plaintiff, had she exercised reasonable diligence, would have discovered her injury sometime before October 1999. *Noble* v. *Chrysler Motors Corp.*, 32 F.3d 997 (6ᵗʰ Cir. 1994), gives helpful guidance: "The determination of the

---

[9]Although literally read, the quotation from *Chapple* and *Richards* suggests that the party asserting the bar has to prove either the injury (i.e., a final decision in some cases) or discovery, the context in which the cases using this language are decided make that interpretation absurd. *See Cada* v. *Baxter Healthcare Corp.*, 920 F.2d 446, 449 (7ᵗʰ Cir. 1991) ("Accrual is the date on which the statute of limitations begins to run. It is not the date on which the wrong that injures the plaintiff occurs, but the date–often the same, but sometimes later–on which the plaintiff discovers that he has been injured."). Suffice it to say, both elements must be present for accrual and it doesn't matter which came first: The claim accrues on the date of discovery or the date plaintiff should have discovered her injury, unless the injury is later.

accrual date is an objective one: 'the asserted actual knowledge of the plaintiffs is not

determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident

and objective facts concerning the accrual of their right to sue.'" *Id.* at 1000, quoting *Chrysler*

*Workers Ass'n* v. *Chrysler Corp.*, 834 F.2d 573, 579 (6ᵗʰ Cir. 1987); *see also Cathedral of Joy*

*Baptist Church* v. *Village of Hazel Crest*, 22 F.3d 713, 717 (7ᵗʰ Cir. 1994) (noting in § 1983 suit

that "An objective inquiry into the facts must be made to determine when a plaintiff should have

discovered its injury.").

Even though it is plaintiff's burden to show that she comes within the discovery rule,[10]

the USPS has not shown that it is entitled to summary judgment on this record. All of the

USPS's arguments regarding plaintiff's diligence have to do with inquiries she did not make

from July 1995 through October 1999, but for most of that period the USPS has not explained

how such inquiries would have led her to discover an injury that had yet to occur, at the earliest

in December 1998. Thus, cases such as *Metz*, on which USPS relies, are readily distinguishable.

In *Metz*, the court attributed to the plaintiff knowledge of her injury – the union's failure to file a

grievance on her behalf – before actual notice to plaintiff where the collective bargaining

agreement provided that the union must file a grievance within 5 days of plaintiff's request and

once filed the union had approximately 23 days to process the grievance to a final decision or

elect arbitration. The court rejected the argument that the union had to give actual notice and

said, in substance, that she should have inferred from the circumstances (namely, that under the

---

[10]*Zapp* v. *United Transp. Union*, 879 F.2d 1439, 1441 (7ᵗʰ Cir. 1989) (in applying
discovery rule in a 301 case, court noted that plaintiff has the burden of showing she falls within
discovery rule) (citing *Clift* v. *UAW*, 818 F.2d 623, 629 (7ᵗʰ Cir. 1987)); *Cathedral of Joy Baptist
Church*, 22 F.3d at 717 (§ 1983 case).

contract provision the time to elect arbitration had arrived), certainly before six months passed after her discharge, that the union would not pursue a grievance. The court also noted that the plaintiff had not alleged that she was misled by the union as to its not filing a grievance on her behalf. *Metz*, 715 F.2d at 304. *See also Christiansen* v. *APV Crepaco, Inc.*, 178 F.3d 910, 914 (7th Cir. 1999) (similar fact pattern and holding). Here, the USPS makes a similar argument that plaintiff knew that her own grievances were normally resolved in about one to two months but made no inquiries from July 1995 through October 1999, nearly four years. The record demonstrates, however, that plaintiff did make inquiries at or about the time a normal grievance should have run its course and was told that the matter would be resolved later–before anyone was paid. The objective facts stated in a light favorable to the plaintiff do not establish that plaintiff should have inferred that the grievance had been either settled or paid.[11] For these reasons, the court concludes that USPS is not entitled to summary judgment on the issue of whether plaintiff's suit is time-barred.

B.    Section 301 Claim

A claim against an employer for breach of a collective bargaining agreement under

---

[11]*Compare Chapple*, 178 F.3d at 506 (plaintiffs admitted that were aware of letter months before limitations period had expired and once they knew of letter they had ample time to file claims based on it; further plaintiffs did not explain why letter could not have been obtained sooner); *Barlow* v. *Am. Nat'l Can Co.*, 173 F.3d 640, 644 (8th Cir. 1999) (even though grievance was not filed on behalf of plaintiffs, plaintiffs were charged with knowledge that their local unions had filed grievances to clarify their rights *and* it was undisputed that union's made effort to explain settlement agreement to their members, therefore, it was incumbent upon plaintiffs to file within six months of the settlement agreement); *Cathedral of Joy Baptist Church*, 22 F.3d at 718 (public announcement of meeting on zoning permit, front page article in local newspaper concerning upcoming vote, plaintiff's motivation to determine when action would be taken and plaintiff's failure to make inquiry demonstrated lack of reasonable diligence to come within the discovery rule).

section 301 and a claim against a union for breach of the duty of fair representation (a duty that is implied under the scheme of the National Labor Relations Act) "are inextricably interdependent." *DelCostello*, 462 U.S. at 164. To prevail against either the employer or the union, plaintiff must not only show that the employer breached the contract but also that the union breached its duty of fair representation. *Id.* On summary judgment, the failure to produce sufficient evidence from which a reasonable jury could conclude that the union breached its duty of fair representation bars the claim in its entirety. *See Crider* v. *Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997) ("neither claim is viable if the other fails").

1.    Duty of Fair Representation

Because of a "union's statutory role as exclusive bargaining agent" there is a duty to exercise the power on behalf of and in interest of its constituency – the union members. *See Air Line Pilots Ass'n Int'l* v. *O'Neill*, 499 U.S. 65, 74 (1991). This duty of fair representation is "akin to the duty owed by other fiduciaries to their beneficiaries" and just as "fiduciaries owe their beneficiaries a duty of care as well as a duty of loyalty, a union owes employees a duty to represent them adequately as well as honestly and in good faith." *Id.* at 75. At the same time, "[l]ike other representative entities, unions must balance the competing claims of its constituents . . . [and] [t]he Court has recognized that '[t]he complete satisfaction of all who are represented is hardly to be expected.'" *Goodman* v. *Lukens Steel Co.*, 482 U.S. 656, 688-89 (1987) (Powell, J., concurring) (quoting, in part, *Ford Motor Co.* v. *Huffman*, 345 U.S. 330, 338 (1953)). For this reason, an employee may not recover for breach of the duty of fair representation for a union's decision to pursue or settle a grievance, or any other discretionary decision, absent proof of bad faith, arbitrariness or discrimination. *O'Neill*, 499 U.S. at 67; *Vaca* v. *Sipes*, 386 U.S. 171, 190

11

(1967); *Humphrey* v. *Moore*, 375 U.S. 335, 349 (1964); *see also Fillipo* v. *Northern Indiana Public Serv. Corp.*, 141 F.3d 744, 748-49 (7th Cir. 1998) (noting that this "is a tripartite standard" and in order for plaintiff "to defeat a motion for summary judgment, plaintiff must proffer evidence supporting at least one of these elements").

Whether a union's representation is arbitrary entails a consideration of the objective adequacy of the union's conduct. *Crider*, 130 F.3d at 1243. *Vaca* placed some flesh on the bones of "arbitrariness" when the Court said, "Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." 386 U.S. at 191. Perfunctory, according to Webster, means "characterized by routine or superficiality: done merely as a duty." Webster's Third New Int'l Dictionary (unabridged) at 1678 (1981). *See also Webb* v. *ABF Freight Sys., Inc.*, 155 F.3d 1230, 1240 (10th Cir. 1998) (quoting same). Courts have construed the "Supreme Court's reference in *Vaca* to the 'perfunctory' processing of a grievance to mean that 'the union acted without concern or solicitude, or gave a claim only cursory attention.'" *Id.* (quoting *Beavers* v. *United Paperworkers Int'l Union, Local 1741*, 72 F.3d 97, 100 (8th Cir. 1995)). And unintentional conduct may be arbitrary if "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' as to be irrational." *O'Neill*, 499 U.S. at 67; *Fillipo*, 141 F.3d at 749. However, "the test for determining whether particular conduct is arbitrary can be quite forgiving" and courts "should not substitute their judgment for that of the union, even if, with the benefit of hindsight, it appears that the union could have made a better call." *Garcia* v.

12

*Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995). "Only an egregious disregard for union members' rights" will constitute a breach of the duty of fair representation. *Id.* Although this is a high standard to meet, the court concludes that there is sufficient evidence in the record to give rise to an issue of fact as to whether the union processed the grievance in a perfunctory manner in improperly processing the grievance to Edwards' benefit and as such was an egregious disregard of plaintiff's rights.

The parties agree that the decision to award Edwards the settlement money was made by Clark in reliance upon the designation made by the USPS (Kulig) in the Step 2 denial letter. Further, the parties also apparently agree that an error had been made by the USPS in identifying Edwards as the successful bidder. *See* Union's Reply Br. at 10; USPS Reply Br. at 9; Pl. Response Br. to Union Br. at 12-13. Plaintiff argues that the union's action in processing the grievance was arbitrary because, *inter alia*, it failed entirely to investigate who should be the proper recipient of the proceeds either at the local level by Rivers or at the national level by Clark before awarding the proceeds to Edwards. The union argues that the decisions made by Rivers and Clark not to do their own investigations into the eventual successful bidder were rational.

As to Rivers' action, the court finds no evidence of arbitrariness in not naming plaintiff as the successful bidder as he pursued the grievance. Rather, the evidence is uncontroverted that Rivers relied on the union's prevailing practice in moving the grievance through the process on behalf of the "eventual successful bidder" until it was resolved. *See* Union Br. at 14; Pl. Response Br. to Union Br. at 14. A union's reliance on practice is a wholly relevant consideration and a sound reason for an omission to do something, and will not give rise to liability. *See Ruzicka* v. *General Motors Corp.*, 649 F.2d 1207, 1211-12 (6th Cir. 1981) (Ruzicka

II). No reasonable jury could conclude that this discretionary decision was irrational, perfunctory or otherwise arbitrary.

As to Clark's conduct, however, the court concludes otherwise. The union states that although "[t]ypically, Mr. Clark would investigate who was the actual successful bidder, . . . he believed that this investigation had already been completed, [and a]lthough the APWU did not do its own investigation to determine who had been the successful bidder, relying the [USPS's] determination of the successful bidder was not so far outside the wide range of reasonableness as to be irrational." Union Br. at 15. The union does not cite any testimony of Clark, however, as to his rationale. Indeed, a review of Clark's declaration is more a chronology of what he did than an explanation of why, other than to say he relied on the file.

> Once I had decided to settle the grievance, I reviewed the file to determine who
> was the successful bidder for the duty assignment in question, and therefore,
> entitled to the money that resulted due to the settlement.

See Clark Decl. at ¶ 21. Significantly, Clark's statement fails to explain why a three-year-old letter in a "union grievance" file should justify dispensing with his usual practice to investigate. See Peters v. Burlington Northern R.R., 931 F.2d 534, 541 (9th Cir. 1990) (finding significant that union failed to explain its action as product of judgment, whether sound or flawed, and thus there was a triable question as to whether union acted in completely arbitrary manner by failing to research agreement).

Conceding that it may have been a mistake to rely on the USPS determination and that the union could have verified the USPS's information, the union contends that its failure to do so was negligence at most. If perfunctoriness is actionable, as indicated above, then the court must

draw a line between negligence and something worse, perfunctoriness.[12] The factual and legal

context of this grievance suggests an issue of fact as to whether the union was perfunctory in

processing the grievance. In short, it is undisputed that Clark departed from the union's and his

normal practice. *Compare Armstrong* v. *Chrysler Corp.*, 972 F. Supp. 1085, 1090 (E.D. Mich.

1997) (granting summary judgment on breach of duty of fair representation claim where, inter

alia, "[p]laintiff has come forward with no proof that the Union departed from its established

policies and procedures regarding the investigation of grievances."). Although a plaintiff must

show more than a union's failure to act in accordance with its standard procedure to establish that

the union's activities were arbitrary, *Garcia*, 58 F.2d at 1179, if a union decides to make a

rational decision to protect the interests of the union as well as its employees which it is entitled

to do, it must also pursue this "rational strategy with sufficient competence and vigor." *Id.* at

1179-80. Here the union rationally chose to leave the process open and not identify the

successful bidder earlier in the process, but the court is not persuaded that the evidence, viewed

in a light favorable to the plaintiff, demonstrates that the union fulfilled its responsibility to

---

[12]The cases that discuss perfunctoriness suggest that there is a type of balancing that is involved. *See Hill* v. *Sanford Corp.*, 1997 WL 164002, *6 (N.D. Ill. Mar. 27, 1997) (reasoning that an employee's interest in not being deprived of his right to proceed is balanced against need to afford deference to union's decision making and employer's interest in being able to rely on finality in the grievance process) (relying on Judge Cudahy's concurrence in *Hoffman* v. *Lonza*, 658 F.2d 519 (7th Cir. 1981)). Deference to union decision making is essential to the purposes of *Vaca* standard but deference to a union's failure to make a decision serves no valid union interest. *Hoffman* v. *Lonza*, 658 F.2d 519, 525 (7th Cir. 1981) (Cudahy, J., concurring). *See also Dutrisac* v. *Caterpillar Tractor Co.*, 749 F.2d 1270, 1274 (9th Cir. 1983) ("When the challenged conduct, however, is based not on any decision about how to handle the grievance, but on the failure to perform ministerial acts, judicial deference to the union serves no purpose and "union negligence may breach the duty of fair representation to cases in which individual interest at stake is so strong and the union's failure to perform a ministerial act completely extinguishes the employee's right to pursue his claim.").

15

pursue the strategy with competence or vigor. Rather, it concludes that a reasonable jury could

conclude the contrary, that the effort to identify the correct recipient of the money was

perfunctory.[13] For these reasons, summary judgment cannot be granted. The court, thus, turns to

the question of whether there is sufficient evidence of a breach of the CBA, which plaintiff must

also show to prove her case against both the union and the USPS.

2.      Breach of CBA

        The USPS argues that even if this court finds that there is a material issue of fact as to a

breach of the union's duty of fair representation, plaintiff's claim must nevertheless fail because

she cannot establish an actionable breach of the CBA by which she can prevail against the USPS.

Plaintiff's primary contention regarding breach is that the USPS violated CBA Article 37, which

requires the USPS to post vacancies within 21 days. CBA, Art. 37, Sec.A.1. The USPS first

suggests that there is no breach of this provision because the position was vacated in 1995 (when

the computer recognized the vacancy) not 1993. However, USPS does not seriously develop this

contention, and rightly so, since it argues in the same brief that Negron vacated the job in 1993.

*See* Corr. Mem. at 9.[14] Thus, the USPS is left to argue that plaintiff cannot prove breach of the

CBA because the conditions precedent (timely filing of the grievance, for example) were not met.

Primarily, the USPS argues that the union's filing of the grievance in 1995 when the position was

vacated in 1993 was untimely under the CBA. Because the CBA provides that any grievance

---

[13]Because the court finds that there is an issue as to whether the union's processing of the grievance was perfunctory and arbitrary, it does not discuss whether there is evidence of bad faith or discriminatory conduct as alleged by plaintiff.

[14]The Step 2 denial letter from USPS states, "The system then reported that there were two jobs vacant, *one of which was left vacant since 1993* . . . ." (Emphasis added).

initiated by the union must be initiated "within fourteen days of the date the Union first became

aware of (or reasonably should have become aware of) the facts giving rise to the grievance,"

CBA, Art. 15, the USPS contends that notice to the union of Negron's being placed in job

number 7583576 on June 25, 1993 and notice shortly thereafter of Negron's being placed in

another job should have alerted the union that job number 7583576 was vacant.

The court finds that the USPS's own statement of undisputed facts raises an issue of fact

with respect to what the union should have known. If, as the USPS argues, the union "should

have known" of a vacancy merely by *receiving* two award notices back to back, then one may

question why the USPS, the *generator* of the award notices, did not know in 1993. The USPS

Step 2 denial letter nearly concedes that USPS did not know: "This error in the computer system

did not come to our attention until Negron bid out of his [second] position." The issue here, of

course, is whether the union, not the USPS, had reason to know, and the court leaves that issue

for trial.

The USPS also argues that plaintiff cannot establish that she was qualified for the job.

The USPS points to Art. 37 of the 1995 CBA definitions:

> Currently Qualified. Possessing a live record on all of the qualifications for a
> posted duty assignment, including scheme and/or the ability to key at the
> appropriate speed and accuracy on the appropriate keyboard, such that the
> employee can assume the posted duties of the duty assignment without the need
> for a deferment period.

> Live Record. A record of qualification which makes an employee qualified, for
> bidding purposes, on a particular scheme, skill, or other qualification requirement.
> A live record begins when an employee qualifies on the requirement. Its duration
> is as follows:

>> 1. Except for positions listed in Section 3.F.7, a live record lasts for
>> two years after the employee ceases to perform the duties which

require the skill.

***

> 3. A full-time regular or part-time regular employee is considered to cease performing the duties which require a skill when the employee no longer holds a bid requiring the skill.

CBA, Art. 37, Sec. 1. K & L. The USPS argues that plaintiff was not qualified under these definitions because plaintiff became a review clerk on June 25, 1993, she ceased working as an FSM on that date (prior to that she was FSM having taken FSM job in 1983) and did not start the FSM job number 7583576 until over two years after she ceased to perform the prior FSM job. Although this argument has some force, the USPS fails to show there is no genuine issue of fact with respect to whether plaintiff was "qualified." The USPS's own statement of material facts shows otherwise. For example, the USPS's asserts that *Edwards* was *senior bidder* for the job and was assigned the position "qualification pending" but was unable to qualify and on June 30,1995, but that *plaintiff* was sent a notice indicating that she was the *successful bidder* and held the job effective July 8. *See* USPS 56.1 Statement, ¶¶ 35-36 (emphases added). The USPS also references elsewhere in its 56.1 Statement a CBA provision, 37 Sec. 3.F.1., to assert that the bidder with the most seniority is awarded the position. *See* USPS 56.1 Statement, ¶ 11. Section 3.F.1. provides, in full:

> Within 10 days after the closing date for the posting . . . the installation head shall post a notice listing the senior or successful bidder(s) and their seniority date(s). *The senior qualified bidder meeting the qualification standards for the position shall be designated the "successful bidder."* If a deferment period is required, the employee will be designated the "senior bidder."

CBA 37 Sec. 3.F.1. (Emphasis added). Thus, the USPS's own admission that plaintiff was "successful bidder" and not calling her "senior bidder" as it had Edwards, viewed in light of the CBA provisions, at least raises the inference that plaintiff was qualified for the position.

18

Therefore, the court concludes that the facts viewed in a light most favorable to the plaintiff raise an issue of material fact as to plaintiff's qualification for the position. For these reasons, summary judgment on the breach of collective bargaining agreement claim will be denied.

C.     LMRDA Claim

Because the court denies the union's and the USPS's motions for summary judgment on the hybrid 301 breach of collective bargaining agreement/breach of duty of fair representation claims, it reserves for trial a decision on the LMRDA claim against the union (Count II) and, therefore, summary judgment on that claim is also denied.

D.     Motion to Strike Attorneys' Fees and Punitive Damages

The union has also moved to strike plaintiff's request for attorneys' fees and punitive damages. As to attorneys' fees,[15] the union requested that this court strike the plaintiff's request for attorneys' fees in attempting to prove that the union breached its duty of fair representation. The court denies the request. *Vaca* set forth the governing principle on damages, which is to "apportion liability between the employer and the union according to the damage caused by the fault of each." 386 U.S. at 197. Although section 301 contains no express remedial provision, upon a finding of unfair representation, courts have recognized that the damage caused by the union includes the attorneys' fees incurred as a result of the union's breach. *See, e.g., Bennett* v. *Local Union No. 66, Glass, Molders, Pottery, Plastics and Allied Workers Int'l Union, AFL-CIO, CLC*, 958 F.2d 1429, 1440 (7th Cir. 1992) ("fees are not awarded as a penalty, but rather as proximate consequential damages for the union's failure to provide representation: the expense

---

[15]The court makes no decision at this time as to the union's recently filed motion for reconsideration as to attorneys' fees.

[plaintiff] has incurred in pursuing her contractual grievance against the [employer] 'is not merely a result of the harm that [the Union] did [her]; it is the harm itself'"); *Del Casal* v. *Eastern Airlines, Inc.*, 634 F.2d 295, 301 (5ᵗʰ Cir. 1981); *Scott* v. *Local Union 377, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 548 F.2d 1244, 1246 (6ᵗʰ Cir. 1977). Therefore, the court denies the union's request to strike plaintiff's request for attorneys' fees against the union.

Plaintiff has also requested punitive damages, but only against the union on her LMRDA claim. Although the union has requested the court to strike the request for punitive damages, it cites only *Int'l Bhd. of Elec. Workers* v. *Foust*, 442 U.S. 42 (1979) in support. Although *Foust* held that punitive damages may not be assessed against a union for breaches of duty of fair representation, it reserved the question as to whether punitive damages were available under the LMRDA. *Foust*, 442 U.S. at 47 n.9. *See also Burkauskus* v. *Hall's Motor Transit Co.*, 1985 WL 1266, *7 (N.D. Ill. 1985). Indeed, the Seventh Circuit recently recognized that "[t]he LMRDA does not specifically permit or preclude punitive damages," *Kinslow* v. *American Postal Workers Union, Chicago Local*, 222 F.3d 269, 278-79 (7ᵗʰ Cir. 2000), adding, however, that "[p]unitive damages are awarded in LMRDA cases only where the union acted with ill will or reckless disregard for the plaintiff's interests." *Id.* "Thus, to merit such an award, plaintiff must show that: (1) in retaliating against the plaintiff, the union acted willfully or with reckless disregard for the plaintiff's interests; and (2) the union conduct was egregious or the harm it inflicted was severe." *Id.* Plaintiff has not alleged that the union acted maliciously or recklessly in preventing her from expressing her views as a union member, nor do the allegations suggest it. Thus, the court grants the union's request to strike plaintiff's request for punitive damages as to the

LMRDA claim. *See Burkauskus*, 1985 WL 1266 at *7 (granting motion to strike request for punitive damages as to LMRDA claim).

## CONCLUSION

For the reasons explained above, the court denies the motions of USPS [#17] and the union [#14] for summary judgment, denies the union's motion to strike attorneys' fees [#14] and grants the union's motion to strike punitive damages [#14].

ENTER: _Joan N Lefkow_
United States District Judge

Date: March 2, 2001